513 So.2d 179 (1987)
The UNITED STATES of America, Appellant,
v.
FIRST NATIONAL BANK OF CRESTVIEW, Appellee.
No. BJ-99.
District Court of Appeal of Florida, First District.
September 9, 1987.
W. Thomas Dillard, U.S. Atty. and Benjamin W. Beard, Asst. U.S. Atty., Pensacola, for appellant.
John P. Townsend of Chesser, Wingard, Barr & Townsend, Chtd., Fort Walton Beach, for appellee.
*180 ERVIN, Judge.
In this appeal from a judgment foreclosing a mortgage, the appellant/lienholder contests the trial court's determination that, pursuant to the terms of an agreement limiting future advances under an existing mortgage held by appellee, First National Bank (bank), an advance made by the bank to the Aughtmans, the mortgagors[1], had priority over appellant's previously-filed lien. We reverse, and agree with appellant that the advance, made without appellant's consent, was not one, as required by the agreement, "necessary for the security or title" of the mortgaged property, and therefore hold that the advance was not included within the bank's lien.
The only disputed issue below was whether, under the terms of the agreement signed by the bank and the mortgagors, the appellant should have been afforded the opportunity to approve or disapprove the advance made to Earl Aughtman. The agreement provided:
Mortgagee [bank] agrees to limit future advances under the security instrument to those necessary for the protection of the security or title thereto, such as advances for real estate taxes, property insurance premiums, reasonable attorney's fees and essential repairs. No future advances, except for those as specified in the preceding sentence, will be made without the prior written consent of the [appellant].
Immediately following the signing of the agreement, the Aughtmans executed a $100,000 mortgage with the appellant. Approximately two years later, the mortgagors, without the prior written consent of appellant, executed a security agreement and renewal of the pledged property under their original mortgage with the bank, which included an advance of approximately $20,000, used for the purpose of settling an unrelated civil suit brought against Earl Aughtman, individually, in Alabama for fraud. The bank argued that the advance was necessary for the protection of its security, and did not require any prior approval by the appellant because, had Mr. Aughtman been unable to defend against the civil action, he would have been unable to farm, and consequently would have been unable to repay his loan to the bank. The trial court agreed, holding that a severe threat to the mortgagors' farming operation existed, thus endangering the bank's security, since the civil suit posed the threat of civil damages, as well as the possibility of criminal liability.
We find that the trial court's interpretation of the agreement signed by the bank is overbroad. Under Section 697.04(1)(a), Florida Statutes, any mortgage which secures not only existing indebtednesses, but also future advances made within 20 years of the original mortgage, whether the advances are obligatory or at the option of the lender, has priority over any subsequent encumbrances, including the full amount of the advances made. The obvious purpose of the agreement signed by the bank and the mortgagors was to ensure that any future advances made by the bank would be only those necessary for the protection of the bank's security, thus limiting the types of future advances that have priority over the appellant's subsequent lien. The trial court, however, in employing an expansive interpretation of the kinds of advances that are necessary for the protection of the bank's security, has defeated the intent of the parties to the agreement. If an advance may be authorized for the purpose of settling an unrelated civil suit against Mr. Aughtman, under the theory that it is one deemed to be necessary for the protection of land held jointly by Mr. and Mrs. Aughtman, then an advance could be made for any number of conceivable situations, including an advance for travel expenses of a trip abroad for the Aughtmans, as a means of relieving them from the care and tensions of maintaining their farm, thereby aiding in the protection of the security of their farming operation.
*181 It is a cardinal rule of contract construction that the intent of the parties is to govern, and that the intent should be ascertained by a reasonable construction of the contract as a whole. 11 Fla.Jur.2d, Contracts § 107. The agreement at issue enumerated four types of advances which were necessary for the protection of the bank's security or title: real estate taxes, property insurance premiums, reasonable attorney's fees, and essential repairs. All of these enumerated items describe the types of advances necessary to the security of the property itself. The maxim "expressio unius est exclusio alterius" applies to contracts as well as statutes, 17 Am.Jur.2d Contracts § 255; hence, the enumeration of certain classes of activities which the contract permits is ordinarily construed as excluding from its operation all of those not expressly mentioned. Cf. University of Florida, Institute of Agricultural Services v. Karch, 393 So.2d 621 (Fla. 1st DCA 1981). Cf. also Bullard v. Fender, 140 Fla. 448, 192 So. 167, 171 (1939) ("`When a mortgage to secure future advances reasonably states the purpose for which it is given, its record is a constructive notice to subsequent purchasers and encumbrances... .'") (quoting Pomeroy's Equity Jurisprudence § 1199 (3d ed.)). The enumeration and association of the words in the agreement, describing the kinds of advances necessary for the security of the title of the mortgaged property, reasonably suggest that the parties intended that future advances be limited to those necessarily and directly relating to the protection of the security of the property, and not those which might possibly be incidental to its protection.
REVERSED.
SMITH, C.J., concurs.
BOOTH, J., dissents with written opinion.
BOOTH, Judge, dissenting.
I would affirm the trial court's order determining that the advance made to Mr. and Mrs. Aughtman was necessary to protect the bank's security interest in the property. The trial court was in the best position to determine that, under the facts presented and in view of the unique nature of the farming operations, the bank's interest was indeed threatened by civil proceedings and potential criminal indictment against Aughtman and that the advance made was proper under the terms of the agreement between the parties. It is to be noted that the agreement does not purport to specify every situation which could threaten the lender's interest in the property and justify an advance to the debtor and that the second mortgagee also benefited from the advanced which apparently allowed the Aughtmans to continue farming operations.
NOTES
[1] The mortgagors failed to answer the complaint in foreclosure; default judgment was entered against them and they are not parties to this appeal.