[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13100
Non-Argument Calendar

_____

D. C. Docket No. 03-60748-CV-ASG

TIMOTHY FENBY,

Plaintiff-Counter-Defendant,

MARYANNE FENBY,
his wife,

Plaintiff,

versus

M/V THREE D OF GUERNSEY,
her engines, tackle, apparel, furniture, equipment
and all other appurtenances thereto appertaining
and belonging,

Defendant-Third-Party-Plaintiff,

BURLEY MARINE LIMITED,
a Guernsey corporation,

Third-Party-Plaintiff-Counter-Claimant-Appellant,

versus

CERTAIN UNDERWRITERS AT LLOYD'S LONDON,
subscribing to Policy Number 02YP0216,

Third-Party-Defendant-Appellee,

CABLE MARINE, INC.,
a Florida corporation, et al.,

Third-Party-Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(February 2, 2007)**

Before BIRCH, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Burley Marine Limited, owner of a yacht, appeals the declaratory judgment entered in favor of Certain Underwriters at Lloyd's London that denied the existence of coverage, under a contract of marine insurance. Burley Marine owns the M/V Three D of Guernsey, which was insured by Lloyd's when it ran aground in Ft. Lauderdale, Florida, in April 2003. The Three D was taken for repairs to

Cable Marine, where Timothy Fenby was injured while working on the yacht. Burley Marine sought a declaratory judgment that the insurance policy on the Three D required Lloyd's to pay for the repairs to the yacht and defend a lawsuit brought by Timothy Fenby and his wife. After a bench trial, the district court entered judgment in favor of Lloyd's. We affirm.

The relevant facts are taken from the findings of the district court. On May 23, 2002, Lloyd's issued an insurance policy on the Three D that provided coverage for one year, and that policy contained two clauses relevant to this appeal. First, the policy limited coverage to certain navigational limits, subject to a "held covered" clause: "Mediterranean Waters . . . or held covered at rate and terms to be agreed subject to notice being given as soon as practicable." A "held covered" clause provides coverage in certain circumstances when a breach of warranty occurs. Hilton Oil Transp. v. Jonas, 75 F.3d 627, 629-30 (11th Cir. 1996). Second, the policy included the following "agreed paid for loss" clause: "Agreed pay for loss or damage to the vessel when caused by the breach of any warranty contained in this policy by a paid captain and/or crew members or a charterer provided . . . such breach is not committed with the consent, approval or knowledge of the assured."

The parties later negotiated changes to the navigational limits for a limited

term of coverage.  In the fall of 2002, George Downing, the beneficial owner of Burley Marine, decided to transport the Three D to Martinique, an island in the West Indies, for the winter season.  Downing had his insurance broker obtain from Lloyd's an endorsement to the insurance policy, which provided that, "[u]pon safe arrival in Martinique, cruising is restricted to Caribbean Waters until April 2003."  On March 31, 2003, Lloyd's issued a second endorsement, which provided that "the cruising range is extended to include Caribbean waters up to and including April 16, 2003."  On April 10, 2003, Lloyd's issued a third endorsement, which provided that "the cruising range is extended to include Caribbean waters up to an including 28th April 2003."  Neither the policy nor the endorsements defined the term "Caribbean Waters."

On April 14, 2003, the Three D ran aground on a beach in Ft. Lauderdale, Florida.  It was piloted by Kaj Collins, a captain hired by Trevor Woodman, the captain hired by Downing to pilot the yacht.  The Three D was taken to Cable Marine, where Fenby was injured.  Fenby and his wife brought a lawsuit against various entities, including Burley Marine.  On April 22, 2003, Lloyd's issued a final endorsement, which provided "coverage is extended to include cruising in Florida waters."

Burley Marine filed a third-party complaint for a declaratory judgment

4

against Lloyd's regarding coverage for damage to the vessel and injuries to Fenby. Burley Marine presented three arguments. First, it contended that the navigational limits had not been breached, because the phrase "Caribbean Waters" is ambiguous and should be construed against Lloyd's. Second, it argued, in the alternative, that the "held covered" provision of the insurance policy provides coverage. Finally, it asserted that the "agreed pay for loss" clause provides coverage.

The district court entered a declaratory judgment in favor of Lloyd's. The district court applied Florida law in interpreting the contracts of marine insurance, see Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 321, 75 S. Ct. 368, 374 (1955), and rejected all three arguments of Burley Marine.

Our standard of review is settled: We review the legal conclusions of the district court de novo and the findings of fact for clear error. Mitchell v. Hillsborough County, 468 F.3d 1276, 1282 (11th Cir. 2006).

Burley Marine first contends that the Three D did not sail beyond the navigational limits covered by the insurance policy when it ran aground on a beach in Ft. Lauderdale. Burley Marine asserts that the phrase "Caribbean Waters" is ambiguous and should be construed against Lloyd's. We disagree.

Contrary to the assertion of Burley Marine, "'[t]he mere failure to provide a definition for a term involving coverage does not necessarily render the term

ambiguous.'"  Health Options, Inc. v. Kabeller, 932 So. 2d 416, 420 (Fla. Dist. Ct. App. 2006) (quoting Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc., 586 So. 2d 95, 97 (Fla. Dist. Ct. App. 1991)).  "Ambiguity is not invariably present when analysis is required to interpret the policy."  Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1175 (11th Cir. 1985) (citing Blue Shield of Fla., Inc. v. Woodlief, 359 So. 2d 883, 884 (Fla. Dist. Ct. App. 1978)).  "Under Florida law, the words utilized in an insurance policy are to be given their plain and ordinary meaning."  Rigby v. Underwriters at Lloyd's, London, 907 So. 2d 1187, 1188 n.1 (Fla. Dist. Ct. App. 2005).

The phrase "Caribbean Waters" is not ambiguous in this circumstance. Under the plain and ordinary meaning of the words, "Caribbean Waters" do not include waters immediately off the coast of Ft. Lauderdale, Florida.  "Caribbean Waters" are waters of or relating to the "Caribbean," and The Oxford English Dictionary defines the word "Caribbean" as an adjective or noun "applied to certain of the West Indian isles, and to the sea between them and the [South and Central American] mainland."  The Oxford English Dictionary 899 (2d ed. 1989) (entry for "Carib").  Ft. Lauderdale is not a West Indian isle, and between Ft. Lauderdale and the Caribbean Sea are more than 200 miles of the Atlantic Ocean and the island of Cuba.  See 14 The New Encyclopedia Britannica 304 (15th ed.

6

2003) (entry for "Caribbean Sea") (describing the Caribbean Sea as bounded to the north by the islands of Cuba, Hispaniola, Jamaica, and Puerto Rico).

Second, Burley Marine argues that, even if the Three D sailed beyond the navigational limits covered by the insurance policy and the endorsements, the "held covered" provision of the policy provides coverage. We disagree. A "held covered" clause provides coverage when a breach of warranty occurs, but only if the breach was not willful. Hilton Oil Transp., 75 F.3d at 630. The district court found that Downing knowingly and intentionally sent the Three D out of "Caribbean Waters."

Burley Marine argues that, contrary to the finding of the district court, Downing did not know that the waters immediately off the coast of Ft. Lauderdale were outside "Caribbean Waters," but Burley Marine fails to provide any evidence to support this assertion. "If the appellant intends to urge on appeal that a finding [of the district court] . . . is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding . . . ." Fed. R. App. P. 10(b)(2). Because Burley Marine failed to comply with this rule, we cannot review the alleged evidentiary error and must affirm the finding of the district court. Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002).

Finally, Burley Marine contends that the "agreed pay for loss" clause of the insurance policy provides coverage. Lloyd's "[a]greed [to] pay for loss or damage to the vessel when caused by the breach of any warranty contained in this policy by a paid captain and/or crew members or a charterer provided . . . such breach is not committed with the consent, approval or knowledge of the assured." Burley Marine argues that, even if navigational limits were breached, the breach was not committed with the consent, approval, or knowledge of Downing.

We disagree. The district court found that Downing approved and ordered that the Three D be sailed beyond the navigational limits covered by the insurance policy and endorsements. Although Burley Marine contests this finding, it again offers no evidence to support its assertion. Without a transcript of the trial to review, we must affirm the finding of the district court.

The declaratory judgment of the district court is

**AFFIRMED.**